```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MISSOURI
                       EASTERN DIVISION
```

JAMES MANTLE,                     )
                                  )
            Plaintiff,             )
                                  )
      vs.                         )    No. 4:07-CV-055 (CEJ)
                                  )
CITY OF COUNTRY CLUB HILLS,       )
et al.,                           )
                                  )
            Defendants.            )

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion for summary judgment. Plaintiff opposes the motion and the issues have been fully briefed.

Plaintiff James Mantle brings this suit under 42 U.S.C. §1983, alleging that defendants City of Country Club Hills and Annette Mosby, in her official capacity of Mayor, terminated his employment in retaliation for statements he made regarding criminal misconduct of a former city official. Plaintiff contends that his statements were protected under the First Amendment. Plaintiff also brings a wrongful discharge claim against both defendants, alleging that his termination violated the public policy of the State of Missouri. Plaintiff's wrongful discharge claim is brought against defendant Mosby in both her official and individual capacities. Plaintiff seeks actual and punitive damages along with an award of reasonable attorneys' fees and costs.

**I.   Background**

Plaintiff was employed by defendant City of Country Club Hills as the Chief of Police. His employment was terminated on May 8, 2006, upon a vote of the City's Board of Alderpersons. At the time of plaintiff's termination, defendant Annette Mosby was the Mayor of the City of Country Club Hills.

In December 2004, plaintiff was informed by defendant Mosby, who was at that time President of the Board of Alderpersons, that funds were missing from the Municipal Court's bond account.[1] Plaintiff was informed that Felton Flagg, the city's mayor at the time, had admitted to removing the funds. Although she knew that plaintiff was the Chief of Police, defendant Mosby stated in her deposition that she did not believe she was making an official police report. She stated that, although she wanted plaintiff to report Mayor Flagg's conduct to the appropriate authorities, she did not instruct him to do so.

Plaintiff decided to report Mayor Flagg's criminal misconduct to Judge Buchholz of the Municipal Court. Judge Buchholz, in turn, referred the matter to county law enforcement authorities for investigation. The investigation resulted in criminal charges against Mayor Flagg, who subsequently resigned. As Board President, defendant Mosby became acting Mayor. To fill defendant

---

[1]Plaintiff contends that this conversation occurred late at night during a personal telephone call between plaintiff and defendant Mosby. Plaintiff insists that he was provided this information as a friend of defendant Mosby, and not in his capacity as a city police officer. Defendant Mosby stated in her deposition that she believed she met with plaintiff in his office, but acknowledges that the conversation could have taken place at night over the telephone as plaintiff alleges.

Mosby's position on the Board of Alderpersons, Mr. Flagg's aunt, Ms. Parnell, was appointed.

Plaintiff alleges that defendant Mosby, along with the Board of Alderpersons, engaged in retaliatory acts against him for reporting Mayor Flagg's conduct.[2] Plaintiff alleges that defendants created an uncomfortable work environment for plaintiff by allowing Mr. Flagg to spend an excessive amount of time in City Hall following his resignation. Defendant Mosby denies that she purposefully allowed Mr. Flagg to loiter around City Hall. She provides a memorandum dated September 7, 2005, from both plaintiff and defendant Mosby, informing all personnel that non-employees were not authorized to roam throughout the City Hall or Police Department. Although it did not name Mr. Flagg, the memorandum specifically stated that this restriction applied to former elected officials. Plaintiff argues that the memorandum was posted only for a short time before being removed, and contends that defendant Mosby took no action to prevent Mr. Flagg from returning to City Hall.

Plaintiff also alleges that defendants changed plaintiff's work schedule from an 11:00 a.m. to 7:00 p.m. shift to a 9:00 a.m. to 5:00 p.m. shift, knowing that medical issues prevented plaintiff from starting work before 11:00 a.m. Defendants counter that the

---

[2] One of the retaliatory acts alleged by plaintiff is that defendants denied plaintiff twenty-four hour a day access to the city owned police vehicle, as he had been given ever since be became Chief. As defendants note, plaintiff provides no evidence to support this allegation and does not even mention it in his response to the current motion.

shift change was not implemented to inconvenience plaintiff, but was necessary because plaintiff had failed to show up for regular work hours prior to the change. Defendant Mosby testified that much of the information available to her and the Board of Alderpersons relating to this decision came from Alderperson Parnell, Mr. Flagg's aunt. Alderperson Parnell lived with Mr. Flagg directly across the street from city hall, and often monitored when plaintiff was or was not working.

Plaintiff also cites a three-day suspension imposed by defendant Mosby on February 14, 2006. The letter informing plaintiff of his suspension indicated that he exhibited unprofessional and insubordinate behavior at a February 8, 2006 public meeting of the Board of Alderpersons. The letter indicated that plaintiff told an applicant and the Board of Alderpersons that he believed the applicant was not hired because he was not a minority. Defendant Mosby denied this assertion in the letter and told plaintiff that his statements in the public meeting were both untrue and adverse to the City's interests. Although defendant Mosby was not present at the meeting, she testified that she received several telephone complaints about plaintiff's behavior, including one from each Alderperson.

Finally, plaintiff contends that his termination was the result of his previous whistle-blowing. The stated reason for plaintiff's termination was his failure to work the regularly scheduled hours, as previously set by the Board of Alderpersons. The Board also considered that plaintiff spent $2,000.00 on a city

vehicle without prior approval, although defendant Mosby does not believe this was a major factor in the Board's decision. The Board voted in favor of terminating plaintiff's employment on May 6, 2006. Defendant Mosby, as mayor, did not have a vote.

**II. Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. Agristor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Citrate, 477 U.S. 317, 322 (1986).

**III. Discussion**

    **A.    First Amendment Claim**

The Court will first address plaintiff's §1983 claim. Plaintiff contends that his statements regarding Mr. Flagg's criminal misconduct constituted protected speech under the First Amendment. Plaintiff alleges that defendants retaliated against him for exercising his First Amendment right. Defendants argue that plaintiff's statements were made pursuant to his official duties as a police officer, and therefore did not constitute protected speech.

Public employees do not "surrender all their First Amendment rights by reason of their employment." Garcetti v. Ceballos, 547 U.S. 410, 126 S.Ct. 1951, 1958 (2006). However, "[w]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 1960. Thus, in determining whether a public employee's statements constitute protected speech, the Court examines: (1) whether the public employee spoke "as a citizen on a matter of public concern"; and (2) whether the city had "an adequate justification for treating the employee differently from any other member of the general

public. Id. at 1958-60. If the employee did not speak as a citizen pertaining to a matter of public concern, then the First Amendment offers no protection and the Court need not proceed to the second stage of the analysis. See Id.

Plaintiff alleges that adverse employment actions were taken against him because of his statement to Judge Buchholz about the missing funds. The Court has no doubt that such a statement can be characterized as one addressing a matter of public concern. See Belk v. City of Eldon, 228 F.3d 872, 878-79 (8th Cir. 2000)(noting that speech about the misuse of public funds implicates important public concern). Indeed, "[s]peech disclosing allegations of criminal activity allegedly committed by elected public officials...are matters occupying 'the highest rung of hierarchy of First Amendment values.'" Barnard v. Jackson County, Mo., 43 F.3d 1218, 1225 (8th Cir. 1995)(quoting O'Connor v. Steeves, 994 F.2d 905, 915 (1st Cir. 1993)).

The issue becomes whether the statements were made by plaintiff "pursuant to [his] official duties" as a police officer for the City. See Garcetti, 126 S.Ct. at 1958. If so, then summary judgment in favor of defendants on plaintiff's §1983 claim is appropriate.

Plaintiff contends that he was given information regarding the misconduct in a late-night, personal telephone conversation with defendant Mosby. As such, he argues, he was given this information not because he was a police officer, but because he was defendant Mosby's friend. Plaintiff points out that defendant Mosby

testified that she did not ask plaintiff to report Mr. Flagg's behavior, although she does claim that she hoped plaintiff would make such a report. Plaintiff also asserts that he provided the information to Judge Buchholz as a friend, and not because he felt obligated to do so from his role as Chief of Police. Plaintiff notes that Judge Buchholz is not plaintiff's supervisor and that plaintiff had no responsibilities to him.

Defendants assert that, as a police officer, it was plaintiff's duty to report Mr. Flagg's criminal conduct, even if he was not specifically asked to do so. Plaintiff admits in his deposition that, as a law enforcement officer, he is responsible to report crimes. Defendants state that, even though Judge Buchholz was not plaintiff's supervisor, he did supervise the Municipal Court bond funds. Thus, he was the appropriate authority for such a report to be made.

Based on the undisputed facts, the Court finds that plaintiff reported Mr. Flagg's misconduct to Judge Buchholz as part of his official responsibilities as the chief law enforcement officer for the city. As a police officer, plaintiff had a duty to report crimes, and it is undisputed that Mr. Flagg's conduct constituted criminal activity. It is immaterial whether or not plaintiff was specifically instructed to report Mr. Flagg's admission of theft. The information was relayed to plaintiff, and regardless of how he learned of it, his position as the chief law enforcement officer for the city required him to investigate and report the alleged criminal act, even without a specific directive to do so.

Additionally, the Court is not persuaded that plaintiff acted as a citizen simply because he reported the misconduct to an outside authority instead of a supervisor.  See Cheek v. City of Edwardsville, Kan., 514 F.Supp.2d 1220 (D. Kan. 2007)(rejecting plaintiffs' argument that their report of their superior's misconduct to an outside agency was made as a 'citizen' and not as a police officer).  Plaintiff points to the decision in Livingston v. Bartis, 2008 WL 185791 (E.D. Mo. Jan. 18, 2008), for the proposition that police officers' reports of misconduct to outside agencies are not made pursuant to their official duties.  In Livingston, the speech at issue related to statements made by a police officer regarding a fellow officer's alleged misconduct. The Court found that such speech was not protected when it was directed to the officer's supervisor, but noted that a genuine issue of material fact existed as to whether the statement constituted protected speech when made to the FBI, an outside agency. See Livingston, 2008 WL 185791 at *7-8.  In this case, unlike in Livingston, Judge Buchholz was simply the most appropriate authority to whom to make a report. Being the Chief of Police, plaintiff had no departmental supervisor to whom he could pass along his information. Further, the misconduct was allegedly committed by the Mayor, who possessed some degree of supervisory authority over plaintiff.³  Given these circumstances, it was

---

³Mayor Flagg may not have had the authority to terminate plaintiff's employment without the consent of the Board of Alderpersons.  However, it is undisputed that he did have the ability to discipline plaintiff, as plaintiff admits he was later

-9-

reasonable for plaintiff to report the alleged crime directly to Judge Buchholz since the missing funds involved the Municipal Court. The fact that he did so does not convince the Court that his statement was made as a private citizen rather than through his official duties as Chief of Police.

Because plaintiff's speech "owes its existence" to his position with the city as Chief of Police, he can sustain no cause of action under the First Amendment relating to the City's reaction to that speech. See Garcetti, 126 S.Ct. at 1958-60. Accordingly, summary judgment in favor of defendants on plaintiff's §1983 claim is appropriate.

### B. Wrongful Discharge

The Court will now turn to plaintiff's claim of wrongful discharge in violation of public policy. "In Missouri, an at-will employee may be discharged at any time, with or without cause." Scott v. Missouri Valley Physicians, P.C., 460 F.3d 968, 970 (8th Cir. 2006). "However, Missouri courts have recognized a public policy exception to the employment at-will doctrine." Id. One of these exceptions is when the employee is discharged because he or she reported a violation of law to the public authorities. See Faust v. Ryder Commercial Leasing & Services, 954 S.W.2d 383, 390 (Mo. App. W.D. 1997).

Plaintiff reported a criminal act involving Municipal Court funds to the Municipal Judge. This act easily falls within such an

---

suspended by Mayor Mosby without any action on the part of the Board.

-10-

exception. If plaintiff was, as he alleges, discharged because of this act, then the public policy exception clearly applies. Indeed, for purposes of this motion, defendants do not appear to argue that the public policy exception is inapplicable. Instead, defendants focus their efforts on convincing the Court that the City has sovereign immunity from plaintiff's claims. Plaintiff contends that the City waived sovereign immunity through its purchase of tort insurance coverage through the Missouri Public Entity Risk Management Fund ("MOPERM").

"Municipal corporations traditionally have had immunity...for those actions they undertake as a part of the municipality's governmental functions - actions benefitting the general public." Junior College Dist. of St. Louis v. City of St. Louis, 149 S.W.3d 442, 447 (Mo. banc 2004). Under Missouri law, termination of a city employee is such a governmental function. See Kunzie v. City of Olivette, 184 S.W.3d 570, 574 (Mo. banc 2006). However, municipalities can waive this immunity through the purchase of liability insurance. See Mo. Rev. Stat. §537.610. Pursuant to this section, sovereign immunity is waived "only for the purposes covered by such policy of insurance". Id. Defendants admit that the City purchased liability insurance through MOPERM. Defendants contend, however, that the policy does not cover the type of whistle-blowing claim made by plaintiff.

The MOPERM memorandum of coverage submitted by both parties indicates that "COVERAGE" includes, in relevant part:

> a. Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motorized vehicles within the course of their employment; [and]
>
> b. Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous conditions...as more fully set forth in Section 537.600(2) of the Missouri statutes.

The following section, entitled "DEFENSE", explains that:

> Nothing contained in this section, or the balance of this document, shall be construed to broaden the liability of the Member Agency beyond the provisions of sections 537.600 to 537.610 of the Missouri statutes, nor to abolish or waive any defense at law which might otherwise be available to the Member Agency of its officers and employees.

Defendants argue that these provisions make it clear that the policy provides coverage only for the two exceptions to sovereign immunity contained in Mo. Rev. Stat. §537.600(1) and (2).[4] Defendants cite to Epps v. City of Pine Lawn, 353 F.3d 588 (8th Cir. 2003), in support of their contention.

In Epps, the Eighth Circuit held that the purchase of MOPERM insurance did not waive sovereign immunity. See Epps, 353 F.3d at 594. The court noted that the policy specifically cited to Missouri's sovereign immunity statutes at §§537.600 and 537.610, which name the exceptions to sovereign immunity. Id. Because the

---

[4]In addition to waiver through the procurement of liability insurance, section 537.600 expressly waives sovereign immunity in two additional instances: (1) injuries caused by the negligent operation of a public entity's vehicle; and (2) injuries caused by the dangerous condition of a public entity's property. The Court notes that the language in the "coverage" portion of the policy closely mirrors the language of the statute. See Mo. Rev. Stat. §537.600.

-12-

policy indicated that "liability will not be broadened beyond the limitations of those statutes", the court found that sovereign immunity had not been waived for actions outside the scope of those statutes. Id. at 595. A similar decision was recently reached by this Court in Brown v. Forler, 2007 WL 1018759 (E.D. Mo. 2007). The Court noted that the policy "specifically states that policy coverage is limited to injuries resulting from the operation of motorized vehicles and dangerous conditions of a public entity's property." Id. at *7. Accordingly, the Court found that the defendant did not waive sovereign immunity as to the plaintiff's wrongful death claim. Id.

As in Epps and Forler, the policy at issue here specifically states, in its memorandum of coverage, that coverage is limited to injuries caused by the negligent operation of the City's vehicle or through the dangerous condition of City property. The policy also specifically cites to the statutes which statutorily waived sovereign immunity, a factor relied upon in Epps. This portion of the policy certainly indicates to the Court that the policy was intended to provide coverage only for those two specific instances where sovereign immunity had been statutorily waived.

However, a different portion of the policy appears to contradict this conclusion. On the "DECLARATIONS" page contained on page one of the policy, the phrase "Employment Practice Liability" is listed under the coverage column. The memorandum of coverage does not define the phrase "Employment Practice Liability". A recent Missouri Court of Appeals decision, also

-13-

involving defendant City of Country Clubs Hills, supports the proposition that the inclusion of the phrase "Employment Practice Liability", even if undefined, is sufficient to withstand summary judgment under Missouri law. See Topps v. City of Country Clubs Hills, 236 S.W.3d 660 (Mo. App. E.D. 2007). In Topps, the Missouri Court of Appeals discussed the very issue currently before the court: whether the MOPERM policy for the City of Country Club Hills included coverage for whistle-blowing claims.[5] See Id. Topps was decided after both Epps and Forler. In Topps, a former city employee sued the city claiming that she was wrongfully discharged in retaliation for her uncovering and reporting certain unethical behavior by the city. See Id. at 661. The city claimed sovereign immunity and the issue became whether such immunity was waived through the city's MOPERM policy.

The trial court in Topps found that the policy did not cover whistle-blowing claims and granted summary judgment on the basis that the City was protected by sovereign immunity. See Id. The Missouri Court of Appeals reversed, finding that the inclusion of the phrase "Employment Practices Liability" on the Declaration page made it unclear whether the policy covered the plaintiff's whistle-

---

[5]The parties do not discuss whether the MOPERM policy at issue in Topps was the same policy as what would be applicable to plaintiff Mantle's claims. The Court notes that the Topps plaintiff was terminated in 2004 while plaintiff Mantle was terminated in 2006. Some of the events allegedly leading up to plaintiff Mantle's termination, however, began as early as 2004. The current policy before the Court was effective from January 2006 through January 2007. It is unclear to the Court whether there is any substantive difference between the policy at issue in Topps and the current one.

blowing claim.  Id.  This was true even though the Memorandum of Coverage failed to provide a definition for the phrase.  Id.  The Court concluded that summary judgment, given this uncertainty, was improper.  Id.

This same "Employment Practices Liability" language was also responsible, at least in part, for the denial of summary judgment in Ashford v. City of Lake Ozark, 2006 WL 222124 (W.D. Mo. 2006). In Ashford, the court found that the employment language contained on the Declarations page, together with the policy's questionable authenticity, created enough doubt regarding whether there was waiver of sovereign immunity so as to overcome a summary judgment motion.  See Id. at 5.

Clearly, there are similarities between the policies in Topps and Ashford, and the policy here.  As in both Topps and Ashford, the Declarations page in this matter indicates that coverage includes "Employment Practices Liability."[6] In contrast, neither the Epps nor Forler decisions indicated that those policies included any similar employment related phrase. It is also noteworthy that Topps similarly involved a MOPERM policy issued to the City of Country Club Hills which contained identical language on the Declarations Page as the policy in this matter.[7]

---

[6]The fact that the phrase "Employment Practice Liability" is undefined in the remainder of the policy is insignificant in distinguishing between Topps, Ashford, and this matter.  The courts in Topps and Ashford both held that summary judgment was improper, even though the phrase was mentioned only on the Declarations page.

[7]Both policies were issued to the City of Country Club hills and both stated that a $10,000 deductible applied to the

-15-

But the facts of this case are also distinguishable from those outlined in Topps or Ashford. Notably, the policy at issue here, like in Epps, specifically refers to the sovereign immunity statutes and seems to limit coverage to those areas where sovereign immunity was statutorily waived. The Topps and Ashford opinions do not indicate that this language was present in their respective policies. Indeed, "Missouri courts interpret this language in the MOPERM policy to limit the public entity's liability coverage to only those claims involving the operation of a motor vehicle or the dangerous condition of public property." Grospitz v. Abbott, 2005 WL 2649707 (W.D. Mo. 2005).

Thus, neither Topps nor Epps are fully applicable to this case. Here, the policy contains both a reference to "Employment Practices" coverage (like in Topps) and a statement referencing the sovereign immunity statutes (like in Epps). This contradiction precludes summary judgment, as the Court cannot determine, based on the record before it, how Missouri courts would rule on a policy containing both of the relevant sections discussed in Topps and Epps.

Given this uncertainty, the Court believes that the issue of whether sovereign immunity applies to defendant's MOPERM policy is one best left for the Missouri courts to resolve. Because the Court has determined that defendants are entitled to summary judgment on plaintiff's federal claim, it has discretion to decline

---

Employment Practice Liability coverage.

jurisdiction over plaintiff's supplemental state law claim. See 28 U.S.C. §1367(c)(3); §1441(c). The Court believes it appropriate to decline exercising jurisdiction over plaintiff's wrongful discharge claim, and will remand Count I to the state court from which it was removed. See Lindsey v. Dillard's Inc., 306 F.3d 596 (8th Cir. 2002)(noting that, under §§1367 and 1441, the district court has the discretion to remand state law claims following the dismissal of the only federal claim).

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [#15] is **granted** with respect to the claim asserted in Count II of the Third Amended Complaint. The defendants' motion is **denied** with respect to the claim asserted in Count I of the Third Amended Complaint.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. §1367(c)(3) and §1441(c), the plaintiff's claim in Count I is **dismissed** for lack of subject matter jurisdiction and is **remanded** to the Twenty-First Judicial Circuit Court of Missouri.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 15th day of August, 2008.